IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MARK W. CUTLER,  )
  )
        Plaintiff,  )    Case No. CV-08-507-N-BLW
  )
vs.  )    **MEMORANDUM DECISION**
  )    **AND ORDER**
CORRECTIONAL MEDICAL  )
SERVICES (CMS), RONA SIEGERT,  )
DR. GARRETT, R. YORK,  )
D. CARLSON, KIM MILLER, LINDA  )
GERKHE, individually and in their  )
official capacities,  )
  )
        Defendants.  )
_____  )

        Pending before the Court are various motions filed by the parties that are ripe for

adjudication.  Having reviewed the record, and otherwise being fully informed, the Court

has determined that oral argument is unnecessary and would unduly delay adjudication.

Accordingly, the Court enters the following Order.

## BACKGROUND

        Plaintiff is an inmate in the custody of the Idaho Department of Correction

(IDOC).  In his civil rights Complaint, Plaintiff complains that he has received inadequate

medical care at the prison consisting of the following: (1) failure to provide immediate

care for his broken hand and follow-up care for the resulting chronic pain; (2) failure to

provide adequate treatment for Hepatitis C; (3) failure to provide adequate pain

medication and treatment for chronic neck pain and headaches; (4) failure to dispense

pain medication that was prescribed to him; and (5) failure to provide proper care for jaw

injuries and head trauma suffered when three other inmates assaulted him. He brings his

claims against Correctional Medical Services (CMS) and several individual medical

providers who are employed by, or under contract with, CMS.

## PRELIMINARY MOTIONS

Plaintiff has filed a Motion Requesting Leave of Court to File a Supplemental

Pleading. (Docket No. 9.) He wishes to add additional instances of inappropriate

medical care that occurred after the date he filed his Complaint. Plaintiff's Complaint was

filed on November 19, 2008. The claims in the Complaint arise from incidents in January

2007 through November 2008. The claims Plaintiff wishes to add are from December

2008 through 2009, and there is no indication that the claims have been exhausted.

Accordingly, Plaintiff may not add the claims to this lawsuit, but the Court notes that if

Plaintiff is awarded injunctive relief regarding proper dosages and administration of

chronic care medication, then it appears his new "claims" will be adequately addressed by

the remedy available in this lawsuit.

Defendants have filed a Motion to Strike Plaintiff's Memorandum of Law found at

Docket Nos. 3-2 & 3-2, which was filed as an attachment to Plaintiff's Complaint.

(Docket No. 13.) Defendants argue that the Federal Rules of Civil Procedure do not

provide for such a filing, and that the Memorandum contains inadmissible, prejudicial,

and scandalous subject matter. Because Plaintiff is proceeding pro se, the Court will not

strike the pleading, but will consider the Memorandum as a continuation of the Complaint. The Court is cognizant that Plaintiff's characterizations of Defendants and their actions are merely his opinion, and that Plaintiff often chooses to express himself in a manner that is less than respectful, even when describing his own inappropriate and offensive communications with prison staff in his filings. (*See, e.g.*, Docket No. 9 & 9-1.) In the future, Plaintiff should take care to follow the Rules of Civil Procedure and be respectful to the parties and the Court in selecting the content of his filings.

Plaintiff has filed a Motion to Strike and a Motion to Withdraw Plaintiff's Motion to Strike. (Docket Nos. 21 & 23.) As these motions cancel each other out, they shall be deemed moot. The Court notes that Plaintiff's Motion to Strike is frivolous, as he objects to his copies of Defendants' filings being two-sided copies. Plaintiff should be careful not to file frivolous pleadings or papers in the future, or he may be sanctioned.

Plaintiff has filed a Motion for Leave of Court to Forgo Local Rule 26.1 and 37.2. (Docket No. 24.) He requests that the Court not require him to handwrite each discovery request before he provides his answer, due to a medical problem with his hand. Good cause appearing, the Motion shall be granted. In his responses, Plaintiff must carefully delineate the number of each discovery response next to his answers so as not to confuse Defendants.

Plaintiff has filed a request for service by the United States Marshal Service and a request that CMS be required to produce Dr. Garrett's physical address (last known or current address, if known) in camera to the Court. (Docket No. 26.) Defendants have not

filed a response to the motion.  Good cause appearing, the motion shall be granted.

Plaintiff also requests that the Court issue an order to show cause regarding Defendants' failure to produce a service address for Dr. Garrett or Rona Siegert.  As set forth above, the Court will order Defendant CMS to produce an address for Dr. Garrett, if known, in camera to the Court.  It appears that Rona Siegert is an employee of the IDOC, not CMS, and thus, the Clerk of Court will be directed to forward a copy of the Complaint and a waiver of service form to the Idaho Attorney General.  No basis for sanctions exists, and, to that extent, the Motion is denied.

Plaintiff has filed a request for oral argument.  (Docket No. 28.)  The request shall be denied because oral argument is unnecessary and would unduly delay adjudication of the pending motions.

Plaintiff has requested entry of default for lack of answers from Dr. Steven Garrett and Linda Gerkhe.  (Docket No. 33.)  The Motion shall be denied because Dr. Garrett has not been served and Ms. Gerkhe answered at Docket No. 15.

## DEFENDANTS' MOTION TO DISMISS

Defendants CMS, R. York, D. Carlson, Kim Miller, and Linda Gerkhe have filed a Motion to Dismiss several of Plaintiff's claims for failure to exhaust administrative remedies.   (Docket No. 12.)

**A.      Standards of Law**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The *Jones v. Bock* Court noted the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Id*. at 204.  In addition, the *Jones v. Bock* Court cited with approval the observation that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation."  *Id*. at 219 (internal citation omitted).

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint.  *Woodford v. Ngo*, 548 U.S. 81, 103 (2006).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to

---

[1]  110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq.*

bringing suit in federal court." *Id.* at 85. Proper exhaustion is "defined not by the PLRA, but by the prison grievance system itself." *Jones v. Bock*, 549 U.S. at 218. Therefore, the "level of detail necessary in a grievance to comply with the grievance procedures" will be defined by the prison's own grievance policy. *Id.*

Failure to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has instructed that "pro se claims are construed liberally for purposes of the exhaustion requirement." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008) (immigration context) (relying on *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002) and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**B.    Discussion**

1.    <u>IDOC Grievance Policy</u>

According to the IDOC grievance procedure, the inmate first submits an offender concern form, next a grievance, and then an appeal of the grievance. (Affidavit of Loy Mechling, Exhibits A and B, IDOC Policy 316 and IDOC Division of Operations Directive 316.02.01.001, Docket No. 12-2). When the subject of an inmate grievance is prison medical care, the grievance is routed through medical staff employed by the health

care contractor, CMS. (Mechling Affidavit, ¶¶ 8-10.) The final appeal is reviewed by the CMS health services administrator. (*Id*.)

The grievance form must be filed within thirty (30) days of the incident or problem that is the basis for the grievance. An appeal must be filed within five (5) days of receiving the response. (*Id*., ¶¶ 6 & 9.)

Grievance Policy Number 316 specifies that a grievance is for the purpose of complaining about a "procedure or practice of a division of the Department affecting the offender. For example, conditions of a facility, medical treatment, problems relating to a probation or parole, or a particular incident involving the offender." (*Id*., Exhibit A, p. 10, Docket No. 12-2.) Grievance Directive Number 316.02.01.001 specifies that "the grievance procedure may be used for complaints by offenders regarding all policies, conditions of confinement, actions by employees, actions by other offenders and incidents occurring within the jurisdiction of the Department that affect the offender." (*Id*., Exhibit B, p. 17, Docket No. 12-2.)

Before an inmate files a grievance, he must first address the problem or issue in an informal manner with the person most directly responsible for the area in which the problem or issue exists. The following items are available to inmates to inform them of this mandatory first step in the grievance procedure: (1) Policy Number 316, (2) Grievance Directive Number 316.02.01.001, (3) the "Grievance and Informal Resolution

Process for Offenders Offender Handout" (handout),[2] and (4) the instructions set forth on the offender grievance form.

The second step of the grievance procedure begins the *formal* grievance process, alerting higher prison authorities of the problem or issue. Policy 316 § 05.03.00 requires that the inmate include a statement of the nature of the complaint, which "must be specific as to the complaint, dates, places, personnel involved, and how the complaining offender has been affected." (*Id.*, Exhibit A, p. 11, Docket No. 12-2.) Directive Number 316.02.01.001 is slightly different (with the differences between the policy and directive italicized): "The grievance must contain all information relating to the nature of the complaint. The grievance must be specific as to dates, places, *names of* personnel involved, and how the offender has been *adversely* affected." (*Id.*, Exhibit A, p. 19, Docket No. 12-2.)

The grievance form itself provides spaces for the following information, with no indication that specificity is required: "The decision/action that I am grieving is:"; "I have tried to solve this informally by:"; and "The reason why I feel it should be changed is:". (*Id.*, Exhibit B, p. 24, Docket No. 12-2.) The handout appears to be a summary of the grievance procedures, and it does not state that specificity is required. It instructs inmates to read Standard Operating Procedure (SOP) 316.02.01.01, "Grievance and Informal

---

[2] The "Grievance and Informal Resolution Process for Offenders Offender Handout" (handout) appears to be the prison's one-page instruction sheet given to inmates to provide a brief overview of how to use the grievance procedures. (Mechling Affidavit, Exhibit C, p. 42, Docket No. 12-2.)

Resolution Procedures for Offenders," and it instructs them that the SOP is available by asking a staff member for a copy. (*Id.*, Exhibit C, p. 42, Docket No. 29-2.)

2. <u>Plaintiff's First Grievance</u>

Plaintiff's first grievance, IO 080000056, was completed on May 22, 2008, prior to the filing of the federal civil rights Complaint. (*Id.*, Exhibit D, p. 44, Docket No. 12-2.) Plaintiff complained that Dr. Steven Garrett was violating Plaintiff's civil rights by failing to treat chronic pain and suffering in his left hand and chronic pain and headaches due to arthritis and bone spurs in his neck. He asked to be put back on pain medication to alleviate the pain and suffering. (*Id.*) Dr. Garrett is not a CMS defendant but an independent contractor defendant who has not yet been served. The CMS Defendants agree that this grievance adequately exhausted Plaintiff's claims against *Dr. Garrett* for these medical issues. However, the CMS Defendants argue that Plaintiff was required to name all personnel involved, but because he named only Dr. Garrett, this claim is not properly exhausted as to any CMS Defendant.

The United States Supreme Court has concluded that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance." *Jones v. Bock*, 549 U.S. at 219. Here, the Court rejects Defendants' argument that the naming of all defendants in a grievance is mandatory for the following reasons.

First, the grievance policy and directive permit an inmate to grieve not only general issues such as a "policy," "conditions of a facility," or "medical treatment," but also "a particular incident involving the offender." (Mechling Affidavit, Exhibit A, p. 10,

Docket No. 12-2.)  If the inmate is grieving a general issue, there may not be any

personnel involved, or perhaps the issue involves all personnel working at a facility if

they are implementing the policy complained of.  In such an instance, it would be

impossible or impracticable to name the personnel involved.

Plaintiff's hand and pain medication grievance (IO 080000056) complains of the

type of medical treatment he is receiving, and he has named only one doctor; Plaintiff's

Hepatitis C grievance (IO 080000163) complains of the type of medical treatment he is

receiving at the hands of several un-named prison doctors.  Defendants have argued that

the hand and pain medication grievance is not effective as to the CMS Defendants, but

concedes that the Hepatitis C grievance is.[3]  The Court sees no substantial difference

between the types of claims presented in the two grievances: both complain of ongoing,

constitutionally inadequate medical treatment.  In both, CMS and the CMS supervisors

were alerted to the allegation that CMS was breaching its duty to provide constitutionally

adequate medical care to an inmate at the time the alleged constitutional violation was

occurring.

Second, the grievance materials supplied to inmates are inconsistent.  While

lawyers and judges can print and lay out the policy, directive, form, and handout side by

side for comparison and contrast, inmate laypersons would be able to do so only with

---

[3]  The Court notes that Defendants may have another reason to not contest the lack of
specificity of this grievance, such as they prefer to litigate it on the merits.  Defendants are not
required to contest exhaustion but may waive that defense.  The Court finds both grievances
adequate to exhaust claims that ongoing medical care was constitutionally inadequate.

significant difficulty. The requirement of "names" is listed in only one out of four of these items.[4] Therefore, if an inmate has (1) set forth the "nature of the complaint" on the grievance form with enough specificity to give notice to prison supervisors of a problem and (2) has completed the grievance appeal process, he has "availed himself of the administrative process the state gave him." *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005).

Here, Plaintiff did what was required by *Jones v. Bock*, to alert the prison to a problem, and he did what was required by *Butler v. Adams*, to use the (inconsistent) materials provided by the state to complete all of the levels of the prison grievance system. Importantly, the prison was given the opportunity to resolve the problem, which is the purpose of the grievance system. *See Jones v. Bock*, at 219 ("the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

Third, it would be a convoluted and redundant interpretation of the grievance

---

[4] In addition, the first step of the grievance procedure, the informal offender concern form, has no specificity requirement, again contributing to the confusion of inmates when they reach the second, formal step in the grievance process. Here, Plaintiff argues that IDOC Policy No. 316, p. 4, ¶ 4 provides that an inmate is allowed to address only one issue per offender concern form, and that issue is to be addressed to the staff most directly responsible for the issue being raised. Plaintiff further argues that in the past, he has attempted to place more than one staff member's name on a concern form, and the concern form was returned with instructions for him to readdress the concern to only one staff member. The Court agrees that the grievance procedure, as written, could be confusing to inmates, as the offender concern form instructions seem to emphasize that the proper way to use the form is to focus on *one* staff member, while the grievance instructions emphasize that *all* staff members involved should be named.

procedures if Plaintiff were required to alert the CMS supervisors that he was dissatisfied with their acquiescence that the medical treatment was constitutionally adequate *both* by appealing the original grievance *and* by filing a new grievance about their decision made on the original grievance. The IDOC policy is not clear that an inmate who disagrees with a medical supervisors' decision *has* a different path to contest the disagreement rather than simply file an appeal of the grievance, as directed in Policy No. 316.[5]

If an inmate were required to file multiple grievances to contest medical supervisory decisions, the inmate would have to add to each new grievance the name of the additional medical supervisor who was the final reviewing authority on the previous grievance. The grievance process would necessarily go on and on until the inmate had reached the last authority.[6] In addition, the inmate would be bringing the same underlying problem or issue over and over again in each grievance, with the only new information being that a higher supervisor refused to remedy the ongoing underlying problem. The Court can see no difference in the content and notice in either event-- whether the inmate would have filed a new grievance on each supervisor's refusal to fix the underlying problem or whether the inmate would have simply appealed the refusal on

---

[5] The policy states: "If the offender is not satisfied with the reviewing authority's response, the offender may appeal to the appellate authority." (Mechling Affidavit, Exhibit A, p. 12, Docket No. 12-2.)

[6] Policy No. 316 states: "The appellate authority may certify the grievance to the Director or other Division Administrator when in the opinion of the appellate authority the resolution to the grievance is beyond the appellate authority's control." (Mechling Affidavit, Exhibit A, p. 12, Docket No. 12-2.)

the original grievance, as here.

The simple and more prudent way to interpret the grievance process is that once an inmate has availed himself of all of the grievance procedures as to his problem, he is free to sue any state actor who could have liability under the provision of law governing his cause of action. For example, if an inmate is bringing a claim under the Americans with Disabilities Act (ADA),[7] the proper defendants are not persons, but the state, the state entity, or employees in their official capacities. *See U.S. v. Georgia*, 126 S.Ct. 877 (2006).

Under § 1983, a supervisor "can be held liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal citation and punctuation omitted).[8]

---

[7]Americans with Disabilities Act of 1990, § 1, *et seq*, as amended, 42 U.S.C. §12101, *et seq*. (Title I), § 12132, *et seq*. (Title II), §12181, *et seq*. (Title III).

[8] Similarly, in *Verser v. Elyea*, 113 F.Supp. 2d 1211, 1215-16 (N.D. Ill. 2000), the Court explained:

> The defendants say that all that Messrs. Page or Snyder did was to concur with the denial of Mr. Verser's grievance appeal, and that is not enough. However, the Seventh Circuit has disagreed. "If the [state prison director] denied an appeal submitted by [an inmate plaintiff], this would be sufficient to establish personal involvement" for § 1983 purposes. *Pride v. Peters*, No. 94-2025, 1995 WL 746190, at *1 (7th Cir. Dec. 15.1995) (unpublished order). In a published case, the Seventh Circuit held that the Director of the state prisons had enough personal involvement because he "approved an unjustified disciplinary ticket issued by [subordinates]," *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994) The Director of the Department of Corrections was "presumed to have knowledge of ... the

Accordingly, the Court finds and concludes that Plaintiff may proceed on his claims for monetary and injunctive relief against (1) the defendant who personally participated in the alleged violations of whom the prison had notice (Dr. Garrett), and (2) those supervisory defendants who knew of the ongoing violations and failed to act to prevent them at the time they were reported (Kim Miller, Linda Gehrke, and CMS). *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).[9]

Fourth, other important factors are (1) that Plaintiff is an inmate who has no ability to seek his own medical care but is dependent upon the remedies provided by the grievance system and civil rights laws, (2) that CMS and the CMS supervisors are

---

unlawful practices at [the prison]." Id. ( citing *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)).

* * *

The one Seventh Circuit case to which the defendants direct me, *Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir.1982), holds that merely being informed by letter of unconstitutional conduct is insufficient for personal responsibility. It does not go to whether personally denying or concurring in the denial of a grievance or appeal is personal responsibility. Therefore, I find that Page and Snyder were personally responsible.

[9] This set of facts is to be distinguished from a circumstance where an alleged constitutional violation has already been completed once the alleged violation is brought to the attention of the supervisor reviewing the grievance. If the constitutional violation is complete, and a supervisory grievance reviewer is simply making a determination on whether the prison should provide a remedy for a past violation, the supervisory grievance reviewer has no part in *causing* the constitutional violation. The law is clear that "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988); *see Sandin v. Connor*, 515 U.S. 472 (1995) (noting that liberty interests are generally limited to freedom from restraint). As one court explained, "liability under § 1983 must be based on active unconstitutional behavior" such as directly participating in, encouraging, authorizing, or acquiescing in the alleged violation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Rather, where defendants' "only roles in [a civil rights] action involve the denial of administrative grievances . . . they cannot be liable under § 1983." *Id*.

ultimately responsible for providing Plaintiff with constitutionally adequate medical care, (3) that these defendants are a private entity and its employees functioning as state actors;[10] and (4) that Plaintiff is seeking injunctive relief, such as provision of medications for chronic conditions. On this last point, CMS and the CMS supervisors are necessary defendants to implement any order of injunctive relief. It would not make sense for the ultimate result of the prison grievance system to be that, after Plaintiff was required to complain to the CMS supervisory defendants as the reviewing officials in charge of determining whether constitutionally adequate care is being given, Plaintiff's only option is to sue the independent contractor doctor, who may no longer be working at the prison.

Here, Plaintiff adequately brought the claims regarding inadequate medical treatment to the attention of Dr. Garrett, CMS, and its supervisors in the correct manner provided by CMS and the prison. The first grievance, therefore, adequately exhausted Plaintiff's remedies as to Dr. Garrett, an independent contractor; Kim Miller, CMS Supervisor; Linda Gehrke, Health Services Administrator; and CMS on Plaintiff's claims of (1) failure to provide care for chronic pain and suffering in Plaintiff's left hand; and (2) failure to provide adequate pain medication for chronic neck pain and headaches.

3.    Second Grievance

The second grievance, IO 080000163 (complaining of lack of treatment by the

---

[10] Private entities and their employees functioning as state actors in § 1983 actions have not been afforded all protections to which state entities and state employees are entitled. The law governing private parties is not yet clearly established. *See* Sheldon Nahmod, *The Emerging Section 1983 Private Party Defense*, 26 Cardozo L. Re. 81 (2004); Barbara Kritchevsky, *Civil Rights Liability of Private Entities*, 26 Cardozo L. Rev. 35 (2004).

medical unit for Plaintiff's Hepatitis C condition), was completed on October 27, 2008, also prior to the filing of the Complaint. The grievance alleged that Plaintiff was denied treatment for his Hepatitis C condition, but it did not complain of the acts or omissions of any specific individual. Notwithstanding the lack of specificity of the grievance, the CMS Defendants concede that this grievance properly exhausted the administrative remedy process as to the Hepatitis C claims against them. (Docket No. 12-1, p. 10.)

4.    Third Grievance

The third grievance, IO 080000217 (in which Plaintiff disagrees with the treatment given by N.P. York for assault injury to cheek), was filed on December 12, 2008, after Plaintiff filed his civil rights Complaint. Because the administrative grievance procedure must be exhausted *before* filing suit, the claims set forth in the third grievance shall be dismissed from this action without prejudice. Plaintiff's argument that his Complaint should not be considered "filed" until the Court issued its Initial Review Order is an interpretation of "filed" that does not comport with the purpose behind the PLRA exhaustion requirement. Exhaustion is for the purpose of obtaining a remedy *without* the need for a lawsuit.

5.    Remaining Grievances

As to Plaintiff's other grievances, IO 0900000034 (Plaintiff disagrees with N.P. York's diagnosis of lump on Plaintiff's back), IO 0900000043 (N.P. York failing to give proper prescription for pain), IO 080000107, and IO 080000108 (Plaintiff complains that concerns sent to Dr. Garrett are answered by Kim Miller), Plaintiff did not file appeals.

Therefore, because the administrative grievance process was not fully exhausted, the claims associated with these grievances are also subject to dismissal.

      6.    <u>Plaintiff's Other Arguments</u>

Plaintiff argues that from February 8 to March 10, 2009, IDOC refused to allow him any of his legal material including "the required material to complete any grievance." (*Id.*, p. 5.) Plaintiff's concern forms and grievances on the withholding of legal materials do not have anything to do with exhaustion of administrative (pre-litigation) grievances, but refer to ongoing litigation of Plaintiff's cases. As a result, Plaintiff has shown no causal link between the withholding of Plaintiff's general legal materials and case files pertaining to other litigation and his failure to complete a grievance appeal on an issue not yet in litigation. In addition, Plaintiff's Complaint in this action was filed on November 19, 2008. Given that the entire grievance process should be completed within approximately 60 days, then Plaintiff should have completed the grievance process by mid-November 2008. The withholding of legal materials as late as February 2009 would have been well beyond the time period for exhausting claims that could have been included in the present action.

Plaintiff argues that he was placed in segregation for over two weeks, preventing him from filing an appeal to IO 0900000034 and IO 0900000043. Plaintiff did not, however, seek to obtain an extension of time to file the appeal as soon as he was released from segregation. Nor does Plaintiff show that he asked for a grievance appeal form while in segregation but the form was withheld from him.

Plaintiff also argues that "it was beyond plaintiff's control to meet the 5 day time limit set upon the grievance procedure because Plaintiff was transported from Orofino to Boise without his property." (Docket No. 27, p. 5.) He also argues: "And before plaintiff left ICI-O he submitted an appeal on both of these issues but they obviously never reached the Grievance Coordinator and by the time plaintiff was made aware of this at the I.C.C. prison over two (2) weeks had passed and the window of time set forth in I.D.O.C. policy and procedure for filing a grievance appeal had passed." (*Id.*, pp. 5-6.)

Plaintiff has not produced any form showing that he filed an appeal before he left Orofino. The forms are all printed on NCR (noncarbon copy) paper so that inmates may keep a copy of their submissions. It was not until July 2009 that Plaintiff followed up with prison officials on why the appeal was not answered, clearly well beyond the November 2008 time period when appeals should have been exhausted. The Court does not find this argument credible.

Finally, Plaintiff's argument that Defendants have not contested the allegations of deliberate indifference is premature. Defendants are not required to argue the merits of the claims in a motion to dismiss for failure to exhaust administrative remedies.

## C.     Conclusion

Plaintiff may proceed against Dr. Garrett, Kim Miller, Linda Gehrke, and CMS[11] on Plaintiff's claims of (1) failure to provide care for chronic pain and suffering in

---

[11] The Court reminds Plaintiff that claims against CMS must have at their basis a policy or custom. That question is not at issue today.

Plaintiff's left hand; and (2) failure to provide adequate pain medication for chronic neck pain and headaches, because the Court finds and concludes that Plaintiff has exhausted his administrative remedies on these claims. In addition, Defendants concede that Plaintiff has fully exhausted and may proceed against all CMS Defendants on the claim of constitutionally inadequate treatment by the medical unit for Plaintiff's Hepatitis C condition. All other claims against the Defendants who have appeared are dismissed without prejudice for failure to exhaust administrative remedies.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.      Plaintiff's Motion Requesting Leave of Court to File a Supplemental Pleading (Docket No. 9) is DENIED.

B.      Defendants' Motion to Strike Complaint (Docket No. 13) is DENIED.

C.      Plaintiff's Motion to Strike and a Motion to Withdraw Plaintiff's Motion to Strike (Docket Nos. 21 & 23) are MOOT.

D.      Plaintiff's Motion for Leave of Court to Forgo Local Rule 26.1 and 37.2. (Docket No. 24) is GRANTED to the extent set forth herein.

E.      Plaintiff's request for service by the United States Marshal Service and request that CMS produce in camera to the Court the last-known or current address of Dr. Garrett (Docket No. 26) is GRANTED.  Defendants shall comply with this Order within ten (10) days after entry of this Order.

F.      Plaintiff's request for oral argument (Docket No. 28) is DENIED.

G.      Plaintiff's request for entry of default (Docket No. 33) is DENIED.

H.      Plaintiff's Motion to Extension of Time to File Response to Motion to Dismiss (Docket No. 18) is GRANTED.  The Response at Docket No. 27 is considered timely filed.

I.      Plaintiff's Motion Requesting Order to Show Cause (Docket No. 38) is GRANTED in part and DENIED in part.  Defendants shall produce Rona Siegert's last-known or current address in camera to the Court within ten (10) days after entry of this Order.

J.      Defendants' Motion to Dismiss (Docket No. 12) is GRANTED in part and DENIED in part: Plaintiff may proceed against Dr. Garrett, Kim Miller, Linda Gehrke, and CMS on the claims of (1) failure to provide care for chronic pain and suffering in Plaintiff's left hand; and (2) failure to provide adequate pain medication for chronic neck pain and headaches.  In addition, Defendants concede that Plaintiff has fully exhausted and may proceed against all CMS Defendants on the claim of constitutionally inadequate treatment by the medical unit for Plaintiff's Hepatitis C condition.  All other claims against those Defendants who have appeared to date are dismissed without prejudice for failure to exhaust administrative remedies.

**MEMORANDUM DECISION AND ORDER  20**

K.    The Clerk of Court shall forward a copy of the Complaint, this Order, and a waiver of service form to Paul Panther, Idaho Attorney General's Office, on behalf of Defendant Rona Siegert.

DATED:  **January 22, 2010**

B. LYNN WINMILL
Chief Judge
United States District Court